

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JACQUELINE MUSANTE | : CIVIL ACTION<br>NO. 3:01CV2352(MRK) |
| V. | : |
| NOTRE DAME OF EASTON<br>CHURCH | : NOVEMBER 25, 2003 |

### DEFENDANT'S REPLY BRIEF TO PLAINTIFF'S SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

**I. AN EVIDENTIARY HEARING IS NOT NEEDED TO DECIDE THE APPLICABILITY OF THE MINISTERIAL EXCEPTION.**

The plaintiff argues in her supplemental memorandum that the Court must hold an evidentiary hearing on the plaintiff's actual job functions under Monsignor Driscoll. Contrary to the plaintiff's assertions, an evidentiary hearing is not necessary. As pointed out in the defendant's supplemental memorandum of law dated November 4, 2003, it is clearly proper for the Court to decide this issue on the defendant's Motion from Summary Judgment[1]. There is no reason why the applicability of the ministerial exception cannot be resolved under the defendant's Motion for Summary Judgment.

---

1. Guinan v. Roman Catholic Archdiocese of Indianapolis, 42 F.Supp. 2d 849, 852 (S.D.Ind. 1998); Rayburn v. General Conference of Seventh-Day Adventists, 772 F.2d 1164, 1168 (4th Cir. 1985), cert. denied, 478 U.S. 1020, 106 S.Ct. 3333 (1986); Gellington v. Christian Methodist Episcopal Church, Inc., 203 F.3d 1299 (11th Cir. 2000); Starkman v. Evans, 198 F.3d 173 (5th Cir. 1999); Rosati v. Toledo Ohio Catholic Diocese, 233 F.Supp.2d 917 (N.D. Ohio 2002); Bryce v. Episcopal Chruch in Diocese of Colorado, 121 F.Supp.2d 1327 (D.Colo. 2000).

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No. 412195

Furthermore, as the plaintiff notes in her supplemental brief, "[t]he Court has considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction." Prakash v. American Univ., 772 F.2d 1174, 1179-80 (D.C. Cir. 1984). The plaintiff has had ample opportunity to present evidence to support her claim of jurisdiction. Id. The record is sufficiently established to allow this Court to make a determination as was done in the decisions noted in footnote one above. Id.

## II. THE PLAINTIFF'S SUBMISSIONS SHOW THAT THE MINISTERIAL EXCEPTION SHOULD BE APPLIED IN THIS CASE.

Despite the plaintiff's attempts to characterize the evidence and to ignore crucial bits of evidence and the parties' submissions, it is clear that the ministerial exception applies to the instant case. The plaintiff has repeatedly stated in her submissions that the her actual job functions under Monsignor Driscoll must be analyzed to determine the applicability of the ministerial exception. (Plaintiff's Supplemental Memorandum, p. 2.) This argument is misplaced for two reasons: (1) she was employed by Notre Dame of Easton Parish, not Monsignor Driscoll, and (2) the key analysis is her "actual duties and responsibilities." Hartwig v. Albertus Magnus College, 93 F.Supp. 2d 200, 207

- 2 -

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No. 412195

(D.Conn. 2000) (emphasis added)[2]. Thus, her duties and responsibilities under Monsignor Driscoll and Father Hyl are relevant to the applicability of the exception.

Quite clearly under Father Hyl, the plaintiff's duties and responsibilities from January 1988 through mid-January 1999 were such that the ministerial exception applies. (See plaintiff's November 19, 2003 affidavit, ¶ 7; Affidavit of Father Hyl, ¶¶ 14, attached as Exhibit A.) Therefore, even though her job position and title did not change the plaintiff focuses on her job functions under Monsignor Driscoll from mid January 1999 through July 2000 in an effort to save her claim. (Plaintiff's November 19, 2003 Affidavit, ¶ 6.) However, the plaintiff's efforts to couch her claims under such an analysis fail.

The plaintiff has admitted that her job responsibilities included duties that consisted of teaching, spreading the faith, and supervision or participation in religious ritual or worship[3]. (See plaintiff's Local Rule 56(a)(2) Statement at ¶ 5 - 15.) She has not denied nor submitted any evidence to rebut the statements in these paragraphs of

---

2.  It is important to analyze the plaintiff's responsibilities as well as the job functions she performed. Otherwise, the ministerial exception could be rendered essentially meaningless as a ministerial employee could survive the exception by simply not performing any functions even though the job mandates such. This would necessarily lead to the Court's intrusion into ecclesiastical matters protected by the First Amendment. Hartwig, 93 F. Supp 2d at 207.

3.  The burden is on the plaintiff to submit some evidence to counter the defendant's arguments by setting forth specific facts to rebut the defendant's statement of undisputed facts. Weg v. Macchiarola, 995. F.2d 15, 18 (2nd Cir. 1993); Fed.R.Civ.P. 56(e); Local Rule 56. The plaintiff has not done so.

- 3 -

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No. 412195

the defendant's statement of undisputed material facts. Therefore, the statements have not been rebutted and must be accepted by this Court. Those statements clearly delineate that the plaintiff's job responsibilities and duties under Monsignor Driscoll consisted of duties that are clearly ministerial thereby showing that the ministerial exception applies to this case.

In her Supplemental Affidavit the plaintiff delineates the numerous tasks that she claims she did not perform under Monsignor Driscoll. As mentioned above, these diversions do not carry the day because the plaintiff's responsibilities included ministerial matters. Furthermore, as mentioned above, the plaintiff performed many of these tasks when Father Hyl was her supervisor. Her job responsibilities did not change when Monsignor Driscoll came to Notre Dame of Easton Church and there is no evidence submitted that they did. Her job title and responsibilities remained the same. (Id.; Plaintiff's November 19, 2003 Affidavit, ¶ 6.)

Curiously, the plaintiff admits that she did distribute communion while under Monsignor Driscoll but that this is regularly done by lay persons. (Plaintiff's November 19, 2003 Affidavit, ¶ 22.) However, this is misleading in that lay persons do distribute communion but they must undergo special teaching and/or training before they can distribute communion to become Eucharistic Ministers. (Exhibit A, ¶ 13.) The plaintiff also states that "teaching or religious instruction was never one of my actual job functions at Notre Dame of Easton." (Plaintiff's November 19, 2003 Affidavit, ¶ 17.)

- 4 -

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No. 412195

Yet the plaintiff then describes when she did actually teach religious education classes despite claiming that she never actually taught or provided religious instruction. Id. Thus, teaching and instruction were not only her responsibility but one of her duties that she actually performed.

Additionally, the plaintiff limits her involvement in children's masses and sacramental programs to administrative tasks and states that establishment of the curriculum for the religious education program was done by the Pastor. (Id. at ¶¶ 18, 19.) These statements contradict her previous assertions in her Rule 56 statement wherein she admitted that she was involved with coordinating the Religious Education program, coordinating sacramental programs, and children's masses. (Plaintiff's Local Rule 56(a)(2) Statement, I. ¶ 22 - 24.) These statements are also refuted by Father Hyl. (Exhibit A, ¶¶ 9 - 11.)

The plaintiff's efforts to limit the analysis to her completed functions under Monsignor Driscoll is misplaced. She repeatedly mentions that she was a lay employee which is immaterial. A thorough analysis of the submission of both parties clearly demonstrates that the plaintiff's job duties and responsibilities "are important to the spiritual and pastoral mission of the church." (Internal quotations omitted)(citations omitted.) Hartwig, 93 F.Supp.2d. at 207. Thus, the ministerial exception applies even though the plaintiff was only a lay employee and this Motion for Summary Judgment should be granted.

- 5 -

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No. 412195

THE DEFENDANT

By _____
Brett M. Szczesny of
HALLORAN & SAGE LLP
Fed. Bar #ct 19560
315 Post Road West
Westport, CT 06880
(203) 227-2855

## CERTIFICATION

This is to certify that on this 25th day of November, 2003, I hereby mailed a copy of the foregoing to:

Stuart M. Katz, Esq.
Courtney George, Esq.
Cohen and Wolf, P.C.
1115 Broad St.
Bridgeport, CT 06604

_____
Brett M. Szczesny

488364.1(HS-FP)

03153.0265\

315 Post Road West
Westport, CT  06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No. 412195

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JACQUELINE MUSANTE : CIVIL ACTION
NO. 3:01CV2352(MRK)

V. :

NOTRE DAME OF EASTON
CHURCH : NOVEMBER 24, 2003

### AFFIDAVIT OF REVEREND ROBERT J. HYL

I, REVEREND ROBERT J. HYL, being duly sworn, hereby depose and say:

1. I make this affidavit based upon personal knowledge and belief.

2. I am over the age of eighteen years and believe in the obligations of an oath.

3. I am currently employed as Pastor at Church of the Holy Spirit and have held this position since 1999.

4. I held the position of Pastor at Notre Dame of Easton Parish from 1986 until 1999. While I was the Pastor at Notre Dame of Easton, Mrs. Musante held the positions of Director of Religious Education and Pastoral Assistant.

01110.0254

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No. 412195

5.   While I was the Pastor at Notre Dame of Easton, the Director of Religious Education with and under the Pastor was responsible for the day to day functions of the Parish's religious education program.

6.   The religious education program at Notre Dame of Easton was primarily focused on educating children and adults on the gospel proclamation of Jesus Christ and his Church, building a parish family, and reaching out to serve others. Children and adults were educated about prayer, the Creed, morality and sacraments.

7.   Through these classes and additional studies, children also learn about and receive the holy sacraments of penance, communion, and confirmation.

8.   As Director of Religious Education, Mrs. Musante was also involved in the ministry of the Rite of Christian Initiation of Adults ("RCIA"), a process that is designed for children and adults, both baptized and non-baptized, who desire to become Catholic.

9.   While Mrs. Musante was employed as the Director of Religious Education under my supervision she collaborated and worked with me on all aspects of the religious education program, including but not limited to the following: (1) she was responsible for recruiting teachers and teachers' aides for the religious education program; (2) she monitored the religious education classes that were taught on a weekly basis; (3) she was in charge of religious instructions given to the students in the program; (4) she organized high school youth activities; (5) she established the curriculum for the religious education program and was responsible for what was taught to the students; (6) she was responsible

315 Post Road West
Westport, CT  06880

- 2 -

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No. 412195

for preparing children to receive the holy sacraments that involved separate spiritual and educational activities and preparation; (7) she substitute taught religious education classes whenever a teacher was sick or otherwise failed to appear; (8) she organized children's masses; and (9) she oversaw and implemented the children's Christmas pageant.

10. Mrs. Musante also purchased textbooks and selected those books to be used in the religious education program in collaboration with me.

11. Mrs. Musante performed other tasks that were part of the job and indispensable for the proper implementation of the religious education program in the parish. These other tasks were part of her responsibility of implementing and overseeing the day to day operations of the religious education program and were secondary to her primary duties and responsibilities mentioned above.

12. If Mrs. Musante had not completed the tasks mentioned above, I would have had to do them myself as ultimately I, as Pastor, was responsible for the Parish's religious education program.

13. As the Pastoral Assistant under my supervision, Mrs. Musante visited the sick and homebound in homes, hospitals and convalescent homes at least once a month; brought communion to the homebound and trained lectors. Lectors proclaim readings from the Old and New Testament at mass. She assisted me in training Eucharistic

- 3 -

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No. 412195

Ministers who are specially trained lay persons that distribute communion to parishioners during mass and on other occasions.

14.  The duties of the Director of Religious Education and the Pastoral Assistant are essential to the Pastoral mission of the parish and the Church.

*Rev. Robert J. Hyl*
Reverend Robert J. Hyl

Subscribed and sworn to before me this 21st day of November, 2003.

~~Notary Public/~~
Commissioner of the Superior Court

480509.1(HS-FP)

- 4 -

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No. 412195