UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

Mar 30   12 02 PM '04

U.S. DISTRICT COURT
NEW HAVEN, CONN.

JACQUELINE MUSANTE,

      Plaintiff,

v.

NOTRE DAME OF EASTON
CHURCH,

      Defendant.

CIVIL ACTION NO.
3:01CV2352(MRK)

RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Jacqueline Musante brings this suit against Defendant Notre Dame of Easton Church ("Notre Dame") for alleged violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §621, *et seq.* Defendant Notre Dame now moves for Summary Judgment [doc. #24] on the ground that Ms. Musante's claims are barred by the First Amendment to the United States Constitution. For the reasons set forth below, Defendant's Motion for Summary Judgment is GRANTED.

I.

Ms. Musante held the positions of Director of Religious Education ("DRE") and Pastoral Assistant at Notre Dame, a Catholic Church within the Diocese of Bridgeport, from 1988 until 2000, when her employment with the Church was terminated. Ms. Musante claims that her employment was terminated on the basis of improper age discrimination. The Court will not

1

address her age discrimination claims here,[1] as the principal issue at this stage is whether Ms. Musante's suit against the Church can proceed at all, because the Church's status as a religious institution may mean that this Court lacks subject matter jurisdiction. As discussed below, that question turns on whether Ms. Musante should be considered a "ministerial employee" – namely, whether her position is "important to the spiritual and pastoral mission of the church." *Rayburn v. General Conference of Seventh-Day Adventists*, 772 F.2d 1164, 1168-69 (4th Cir. 1985). If Ms. Musante is a "ministerial employee," both parties agree that this Court lacks subject matter jurisdiction over her claims because the Free Exercise Clause of the First Amendment exempts the employment relationships between religious institutions and their "ministers" from the coverage of various employment laws. Pl's Supp. Brief in Opp'n to Mot. for Summ. J. [doc. #38], at 2; Def's Mem. of Law in Supp. of Mot. for Summ. J. [doc. #25], at 5; *see, e.g., EEOC v. Roman Catholic Diocese*, 213 F.3d 795, 800 (4th Cir. 2000) ("The ministerial exception operates to exempt from the coverage of various employment laws the employment relationships between religious institutions and their 'ministers.'").

Both parties also agree that the question of whether Ms. Musante is a "ministerial employee" is a threshold jurisdictional question of law that this Court (rather than a jury) must resolve. Pl's Supp. Br. in Opp'n to Mot. for Summ. J. [doc. #38], at 3; Def's Supp. Br in Support of Mot. for Summ. J. [doc. #37], at 1; *see also, e.g., Miller v. Bay View United Methodist Church, Inc.*, 141 F. Supp. 2d 1174, 1181 (E.D. Wis. 2001) ("The applicability of the ministerial

---

[1] The Church has also argued in its briefs that it is entitled to summary judgment on the merits of Ms. Musante's age discrimination claims. Mem. of Law in Supp. of Def's Mot. for Summ J. [doc. #25], at 12-17. In view of this Court's decision that it lacks subject matter jurisdiction over Ms. Musante's claims, the Court need not (indeed cannot) reach the merits of Ms. Musante's age discrimination claim.

exception is a question of law for the court.") (citing *EEOC v. Southwestern Baptist*, 651 F.2d 277, 285 (5th Cir. 1981). However, Plaintiff argues that the Court should hold an evidentiary hearing to resolve the disputed issues of material fact regarding Plaintiff's job functions, on the ground that the Court cannot resolve disputed issues of material fact on the papers at the summary judgment stage. Pl.'s Supp. Brief in Opp'n to Mot. for Summ. J. [doc. #38], at 2-3.[2] Defendant contends that an evidentiary hearing is unnecessary. Def's Reply to Pl's Supp. Brief [doc. #42], at 1.

Unquestionably, there are factual disputes between the parties regarding certain of Ms. Musante's duties for the Church during certain periods of time. *Compare* Driscoll Aff, Def's Supp. Br. in Support of Mot. for Summ. J. [doc. #37], Ex. A, ¶16 *with* Supp. Aff. of Jacqueline Musante, Pl.'s Supp. Brief in Opp'n to Mot. for Summ. J. [doc. #38], Ex. 1, ¶¶15-20 (disputing the nature of Ms. Musante's duties as DRE). Moreover, this Court is equally clear that it cannot resolve those factual disputes without holding an evidentiary hearing. *See, e.g., Cadbury Beverages v. Cott Corp.*, 73 F.3d 474, 478 (2d Cir. 1996). However, for reasons set forth below, the Court believes that it can decide the legal question of Ms. Musante's ministerial status on the basis of her assertions alone. Because the Court assumes all of Ms. Musante's allegations to be true in reaching its decision, there are no disputed issues of material fact that the Court must resolve and therefore no need for an evidentiary hearing.

---

[2] The Court permitted the parties to file supplemental briefs and supporting documents after the oral argument to ensure that both had the opportunity to provide all necessary arguments and evidence about this issue. *See* Def's Supp. Br. in Support of Mot. for Summ. J. [doc. #37]; Pl.'s Supp. Brief in Opp'n to Mot. for Summ. J. [doc. #38]; Def's Reply to Pl's Supp. Brief [doc. #42].

3

## II.

Ms. Musante, who is now 76 years old, was hired as the Director of Religious Education and Pastoral Assistant at Notre Dame in January 1988, by Father Robert Hyl. Aff. of Jacqueline Musante, Pl.'s Local Rule 56(a)2 Statement [doc. #30], Ex. 1, ¶2,3. Father Hyl was Ms. Musante's direct supervisor until he left Notre Dame in January 1999. Supp. Aff. of Jacqueline Musante, Pl.'s Supp. Brief in Opp'n to Mot. for Summ. J. [doc. #38], Ex. 1, ¶4. The Church has only three full time employees: the Pastor, the Director of Religious Education and Pastoral Assistant, and another Priest, who reports to the Pastor. The Church also has several part time employees including an organist, a janitor, four secretaries, and two deacons. Driscoll Aff., ¶6-7. There does not appear to be any real dispute between the parties as to the nature of Ms. Musante's job responsibilities when Father Hyl was the Church's Pastor.[3] Ms. Musante testified that while Father Hyl was Pastor, her actual functions as Pastoral Assistant were: "1) reading scripture and distributing Communion during the daily 7:30 a.m. Mass; 2) training eucharistic ministers and readers; 3) supervising the Lay Caring Ministry; and 4) visiting hospitals and homebound parishioners." *Id.* ¶7.

Ms. Musante did not testify as to the nature of her specific duties as DRE during Father Hyl's tenure. However, the Church submitted an affidavit from Father Hyl in which he specified Ms. Musante's duties as Director of Religious Education. *See* Father Hyl Aff., Def.'s Reply Brief [doc. #42], Ex. A., ¶9. Ms. Musante objected to a number of the duties listed by Father Hyl, but did not object to other duties described in Father Hyl's affidavit. *See* Musante Supp. Aff. ¶14-20.

---

[3]Ms. Musante did not have a formal job description at any time, leaving the Court to evaluate the nature of her position based solely on her actual responsibilities.

4

The Court need not resolve this dispute at this stage and will only consider those responsibilities listed by Father Hyl to which Ms. Musante did not object. Accordingly, as DRE under Father Hyl, the Court will accept that Ms. Musante was responsible for a number of aspects of the Church's religious education program, including, *inter alia*, recruiting teachers and teachers' aides for the program, monitoring the religious education classes that were taught on a weekly basis, and overseeing the day-to-day activities of the Church's religious education program. Hyl Aff., ¶9, 11. Additionally, Ms. Musante directed a Rite of Christian Initiation of Adults (RCIA) program, in which she worked with Father Hyl and a team of volunteer parishioners to prepare non-Catholic adults for induction into the Church. Musante Supp. Aff., ¶11.

In January 1999, Monsignor Thomas J. Driscoll replaced Father Hyl as Pastor of Notre Dame and became Ms. Musante's new supervisor, a position he held through the termination of Ms. Musante's employment on July 31, 2000. *Id.* ¶5. Ms. Musante has testified that though she continued to hold the titles of Pastoral Assistant and Director of Religious Education following Monsignor Driscoll's arrival, the nature of her responsibilities in those positions changed drastically.[4] Her responsibilities as Pastoral Assistant were especially reduced. From his first

---

[4] The Church gave generic descriptions of these positions in its Statement of Material Facts. Def's Local Rule 56(a)1 Statement of Undisputed Material Facts [doc. #26], ¶¶9-15. The Church indicated that the Religious Education Director "has the responsibility of designing, developing, implementing, and maintaining an overall religious education program comprising adult, family, youth, child, and sacramental components," and "the responsibility of recruiting and training people who will provide instruction necessary for all components of the religious education program." *Id.* ¶9, 10. The Church also stated that the Pastoral Assistant is used by the Pastor to assist him in "assuring the proper celebration of the liturgy and providing for pastoral visits" and that the Pastoral Assistant's duties "include the training of Lectors, who proclaim readings during the Mass, the training of Eucharistic Ministers, who distribute the Holy Eucharist during the Mass, and conducting pastoral visits on behalf of the pastor and the parish." *Id.* ¶¶14, 15. Ms. Musante did not deny these representations, but left Defendant to its proof. Pl's Local Rule 56(a)2 Statement [doc. #30], ¶¶9-15.

days as Pastor, Monsignor Driscoll informed Ms. Musante that he did not want her assistance during Mass, and eliminated her daily Mass functions. *Id.* ¶8. Monsignor Driscoll also eliminated Ms. Musante's role in the recruiting and training of eucharistic ministers and readers during Mass, not permitting her to schedule any training sessions until her last days at the Church, after he had terminated her employment. At that time she did hold a short meeting with some prospective readers at which she instructed them in using the microphone and public speaking techniques. *Id.* ¶9. In her Complaint, Ms. Musante described her duties as Pastoral Assistant as including, but not limited to, "residence, hospital and convalescent home visits and recruiting and training members of the congregation for lay liturgical functions." Compl. [doc. #1], ¶13.

Ms. Musante's involvement with the Lay Caring Ministry also ended upon Monsignor Driscoll's arrival. The Lay Caring Ministry, founded by Ms. Musante during her tenure under Father Hyl, is a group of adult volunteers who visited parishioners in nursing homes. *Id.* ¶10. Ms. Musante's responsibilities with the group at that time included recruiting volunteers, scheduling hospital visits, and meeting with the group monthly to discuss the visits. *Id.* Monsignor Driscoll put the new Associate Pastor, Father Xavier Renda, in charge of the Lay Caring Ministry soon after becoming Pastor. *Id.* Effectively, under Monsignor Driscoll, Ms. Musante's responsibilities as Pastoral Assistant were reduced to visiting parishioners in Bridgeport and St. Vincent's hospitals once a week and distributing Communion to homebound parishioners once a month. These duties occupied only a limited amount of her time. *Id.* ¶13.

By her own admission, Ms. Musante's primary responsibility as DRE under Monsignor Driscoll was overseeing the Church's religious education program. Compl. ¶ 12. This included "but [was] not limited to" "securing classroom space, ensuring insurance coverage, scheduling

6

classes, making class assignments, maintaining attendance records, recruiting and placing teachers and teachers aides, meeting with parents, classroom discipline, purchasing textbooks and materials, coordinating special programs and events, suggesting tuition rates, billing, program publicity, and preparing budgets." Musante Aff. ¶6; Compl. [doc. #1], ¶12.

However, Ms. Musante specifically denies that as Director of Religious Education under Monsignor Driscoll, she trained volunteer teachers for the religious education program,[5] she ever was in charge of organizing high school youth activities during her employment at Notre Dame, that she prepared children to receive the sacraments,[6] she did any teaching or religious instruction, at least after the first few years (during which time she substitute taught on a few occasions), and (at least after Monsignor Driscoll became Pastor) she established the curriculum for Notre Dame's religious education program or organized or implemented the children's Christmas pageant. Musante Supp. Aff. ¶¶14-20. She also stated that her involvement in the monthly children's Masses was limited to coordinating and publicizing dates, assigning classes to be in charge of each Mass, setting up the hall, and photocopying materials for the teachers. *Id.* ¶18. Ms. Musante also testified that Monsignor Driscoll discontinued the RCIA program, thus terminating her duties for that program, and reduced her discretion more generally, withholding permission for her to implement programs or schedule events. *Id.* ¶¶11, 12.

---

[5] This assertion is complicated somewhat by the fact that Ms. Musante was separately employed by the Diocese of Bridgeport and did conduct some teacher training in that capacity. Musante Supp. Aff. ¶14. Nonetheless, for purposes of summary judgment, the Court will assume that she did no teacher training as DRE.

[6] Though Ms. Musante denies that she played any role in preparing children to receive the sacraments, she does state that she was involved with mailings, securing space, ordering supplies, and meeting with parents prior to First Communion concerning seating, dress code, and photography protocols. *Id.* ¶16.

7

By February 2000, approximately one year after becoming Pastor of Notre Dame, Monsignor Driscoll had already begun the search for Ms. Musante's replacement as DRE, discussing the position with Deacon Ralph Hammock, who was then around 60 years old. Driscoll Deposition, Pl's Local Rule 56(a)2 Statement, Ex. 6, at 53, 59. However, Monsignor Driscoll did not inform Ms. Musante that her employment was being terminated until May 26, 2000, and her last day of work at Notre Dame was on July 31, 2000. *Id.* ¶¶3, 12.

It is undisputed that, in June 2000, Ms. Musante sent a letter to Monsignor Driscoll asking for a letter of recommendation, in which she stated that "[s]ome areas I am considering on diocesan/parish levels, in which I have years of experience and thoroughly enjoy are: Ecumenical dialogue; Pastoral Associate; Spiritual Direction/Counseling; Coordination of some specific phase of total Religious Education; Catechist Training; Liturgy planning/training; Rites of Christian Initiation for Adults." Def's Local Rule 56(a)1 Statement of Undisputed Material Facts [doc. #26], Ex. B. Also, Ms. Musante attached to her Complaint a recommendation letter from Monsignor Driscoll which states that she "knows every facet of Religious Education and has a wide breadth of experience in co-ordinating sacramental programs, children's Masses and youth outreach, from the youngest to those of high school age." Compl. [doc. #1], Ex. E.

Ms. Musante filed her complaint in this action on December 17, 2001, alleging a violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §621, *et seq.*, and a state law claim for negligent infliction of emotional distress. Compl. [doc. #1], ¶30-36.

### III.

Summary judgment is appropriate when there is no dispute as to a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party carries the burden of demonstrating that there is no genuine material dispute of fact. *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 133 (2d Cir. 2000). The Second Circuit has held that "in determining whether a genuine issue has been raised, the inferences to be drawn from the underlying facts revealed in the affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Tomka v. Seiler*, 66 F.3d 1295, 1304 (2d Cir. 1995). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, it is also clear that "a party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248, quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968) (alteration in the original and internal quotations omitted).

The First Amendment to the United States Constitution bars Congress from making any law "prohibiting the free exercise of religion." U.S. Const. amend. I. Courts have found that the Free Exercise clause limits the application of generally applicable laws to religious institutions in certain circumstances and, under this reasoning, have created a "ministerial exception" to workplace discrimination laws, prohibiting the application of such laws, including the ADEA and Title VII, to ministers and other members of the clergy.[7] *See, e.g., Young v. N. Illinois*

---

[7]The Second Circuit does not seem to have directly considered the ministerial exception, though in *Demarco v. Holy Cross High School*, 4 F.3d 166 (2d Cir. 1993), the court suggested that it would follow the general formulation of the rule as described by other circuits. *See id.* at 171-72 (citing ministerial employee cases and stating that there "may be cases involving lay employees in which the relationship between the employee and employer is so pervasively

9

*Conference of United Methodist Church*, 21 F.3d 184, 186 (7th Cir. 1994) (Title VII); *Guinan v. Roman Catholic Archdiocese*, 42 F. Supp. 2d 849, 852 (S.D. Ind. 1998) (ADEA); *Hartwig v. Albertus Magnus College*, 93 F. Supp. 2d 200, 211-12 (D. Conn. 2000) (common law causes of action). When the ministerial exception applies, courts lack subject matter jurisdiction over the case. *Young*, 21 F.3d at 185. The applicability of the ministerial exception is a question of law for the court. *Southwestern Baptist*, 651 F.2d at 285. Indeed, courts have regularly granted summary judgment or dismissed complaints when the exception is found applicable. *See, e.g., Roman Catholic Diocese*, 213 F.3d at 805; *Scharon v. St. Luke's Episcopal Presbyterian Hosp.*, 929 F.2d 360, 363 (8th Cir. 1991).

In determining whether the ministerial exception applies, courts must look to the nature of the position and not simply to the employee's title. "As a general rule, if the employee's primary duties consist of teaching, spreading the faith, church governance, supervision of a religious order, or supervision or participation in religious ritual and worship, he or she should be considered 'clergy.' This approach necessarily requires a court to determine whether a position is important to the spiritual and pastoral mission of the church." *Rayburn*, 772 F.2d at 1168-69. This statement of the doctrine in *Rayburn* has been followed by the federal circuit courts that have addressed the question. *See, e.g., Clapper v. Chesapeake Conference of Seventh-Day Adventists*, 1998 U.S. App. LEXIS 32554, at *14 (4th Cir. Dec. 29, 1998); *Scharon*, 929 F.2d at 363 (8th Cir.); *Minker v. Baltimore Annual Conference of the United Methodist Church*, 894 F.2d 1354, 1357 (D.C. Cir. 1990); *Bollard v. California Province of the Society of Jesus*, 196

---

religious that it is impossible to engage in an age-discrimination inquiry without serious risk of offending the Establishment Clause").

F.3d 940, 945 (9th Cir. 1999). As such, the fact that Ms. Musante is not a member of the clergy is immaterial, and the Court must undertake a fact-specific inquiry, here taking all of Ms. Musante's assertions as true, to determine whether her duties at Notre Dame can be said to be "important to the spiritual and pastoral mission of the church." *Rayburn*, 772 F.2d at 1168-69; *Roman Catholic Diocese*, 213 F.3d at 801. Neither party in this case questions the existence of the ministerial exception or that it could conceivably apply to someone like Ms. Musante who is not officially a member of the clergy; the sole question is whether it applies to Ms. Musante under the present circumstances.

In *Weissman v. Congregation Shaare Emeth*, the court suggested that the ministerial exception should be viewed as a sliding scale, where the nature of the employer and the duties of the employee are both considered in determining whether the exception applies. *Weissman v. Congregation Shaare Emeth*, 839 F.Supp. 680, 683-84 (E.D. Mo. 1993). Thus, in *Weissman*, the court stated that the "more pervasively religious an institution is, the less religious the employee's role need be in order to risk first amendment infringement." *Id.* The *Weissman* court's approach seems sensible, as employees of religious institutions such as churches and synagogues are likely to be inherently involved in religious activity to a much greater degree than, for example, employees of religiously affiliated hospitals or charitable institutions, regardless of the nature of the employees' specific responsibilities. Of course, the religious nature of the employer is not dispositive of the inquiry, since it is still unlikely that a church custodian would ever be considered a ministerial employee. However, when evaluating cases that seem close to the line, it is important to bear in mind whether the institution itself is inherently religious or secular. The Court accordingly notes that in this case the employer is a church, the most religious of

institutions.

Though Plaintiff would not concede the point at oral argument, it seems unquestionable that Ms. Musante's duties under Father Hyl qualify under the test articulated in *Rayburn* and the other cases cited above. As noted, Plaintiff described her Pastoral Assistant duties as "1) reading scripture and distributing Communion during the daily 7:30 a.m. Mass; 2) training eucharistic ministers and readers; 3) supervising the Lay Caring Ministry; and 4) visiting hospitals and homebound parishioners." Musante Supp. Aff. ¶7. The first two certainly constitute "supervision or participation in religious ritual and worship," and these duties as well as her involvement in the RCIA program, which involved preparing non-Catholics for induction into the Church, fall easily under the rubric of teaching or spreading the faith. Numerous cases have found employees to be ministerial employees based on responsibilities with similar or analogous religious content. *See, e.g., Weissman*, 839 F. Supp. 680 (temple administrator); *Rayburn*, 772 F.2d 1164 (pastoral assistant); *Starkman v. Evans*, 198 F.3d 173 (5th Cir. 1999) (Choirmaster and Director of Music); *Roman Catholic Diocese*, 213 F.3d 795 (Director of Music Ministry); *Miller*, 141 F. Supp. 2d 1174 (choir director and music director). Thus, through at least January 1999, the Court concludes that Ms. Musante was a ministerial employee of Notre Dame and would have been barred from bringing this suit had she been terminated at that time.

Ms. Musante does not seriously contest that as of January 1999 she qualified as a ministerial employee. Instead, she bases her defense on the argument that the change in her level of religious and spiritual responsibilities under Monsignor Driscoll altered the nature of her positions as Pastoral Assistant and Religious Education Director so dramatically that a year and one-half later when she was terminated in the summer of 2000, she was no longer a ministerial

employee. As noted above, Ms. Musante alleges that her duties under Monsignor Driscoll were effectively limited to running the administrative components of the Church's religious education program and occasionally distributing Communion to homebound and hospitalized parishioners.

Relying on her testimony alone, however, it is undisputed that Ms. Musante oversaw the religious education program at the Church, Pl's Mem. in Opp'n to Summ. J. [doc. #29], at 8. Running a religious education program for a church would appear to qualify an employee as a ministerial employee. Even if limited to administrative duties, the responsibility of overseeing a religious education program for a church is so bound up in religion that the administrator would likely qualify as a ministerial employee. *See Weissman*, 839 F. Supp. at 683-84.

In *Starkman v. Evans*, the Fifth Circuit identified three questions to be addressed in determining whether an employee should be considered "ministerial." 198 F.3d at 176. First, "the Court must consider whether employment decisions regarding the position at issue are made largely on religious criteria." Second, "the Court must consider whether the plaintiff was qualified and authorized to perform the ceremonies of the Church." Third, "and probably most important," the Court must assess whether Plaintiff "engaged in activities traditionally considered ecclesiastical or religious, including whether the Plaintiff attends to the religious needs of the faithful." *Id.* (internal quotes omitted). Ms. Musante would appear to satisfy the *Starkman* criteria even if the Court considers only her duties under Monsignor Driscoll. The evidence presented indicates that employment decisions for the Pastoral Assistant and Director of Religious Education are based on religious criteria insofar as Ms. Musante was replaced by a Deacon, (who was then replaced by another Deacon), Monsignor Driscoll's recommendation letter for Ms. Musante focuses almost entirely on her religious qualifications, and both of these

positions, but especially the Pastoral Assistant position, could not be performed by someone who was not Catholic, insofar as a non-Catholic could not perform the religious duties involved, such as giving Communion or leading Mass. See Driscoll Deposition, Pl's Local Rule 56(a)2 Statement, Ex. 6, at 53; Driscoll Aff., Def's Supp. Brief [doc. #37], Ex. A. ¶4; Compl. [doc. #1], Ex. E. Ms. Musante did perform a number of religious ceremonies, including the giving of Communion. Finally, her duties as Pastoral Assistant indisputably constitute attending to the needs of the faithful, and there is a strong argument that overseeing a religious education program would meet this standard as well. Indeed, in *Starkman*, the Court found that a choir director met all three of these tests, 198 F.3d at 177.

However, the Court does not believe that it is limited to consideration of only the diminished responsibilities Ms. Musante performed during the year or so before Monsignor Driscoll decided to terminate Ms. Musante's employment. If the Court also considers Ms. Musante's position and duties to include the duties she performed as Pastoral Assistant and Director of Religious Education for eleven years under Father Hyl, the Court believes that it is overwhelmingly clear that the ministerial exception would apply.

The Court has not found, nor has either party presented to the Court, any case dealing with the question of whether an employee who qualifies as a ministerial employee but is later stripped of some of those ministerial duties still qualifies as a ministerial employee when he or she is eventually terminated. Considering this question as a matter of first impression, the Court concludes that it should consider the totality of circumstances, including the duties for which Ms. Musante was responsible during the first eleven years of her tenure in evaluating the nature of her positions with the Church. It would be odd to decide that if Monsignor Driscoll had terminated

Plaintiff's employment immediately upon taking over the Pastorship in January 1999, Ms. Musante's suit would be barred under the ministerial exception, but because he took the preliminary step of reducing certain of her duties as a prelude to his decision about a year later to terminate her, the lawsuit can proceed. Ms. Musante's own testimony indicates that the duties and responsibilities inherent in the positions of Pastoral Assistant and Director of Religious Education unquestionably include the more obviously religious duties she concedes she performed for eleven years under Father Hyl. As such, considering all of Ms. Musante's duties during her entire twelve and one-half-year tenure with the Church, the Court concludes that Plaintiff's position was "important to the spiritual and pastoral mission of the church," *Rayburn*, 772 F.2d at 1168-69, even though in the immediate period leading up to her termination, certain of her overtly religious responsibilities in those positions were reduced or eliminated.

This holding should not be taken to imply that anyone who holds a ministerial job is thereafter grandfathered into the ministerial exception for the rest of their careers. If an employee's formerly ministerial position changed such that for a substantial period of time the position included secular responsibilities only, that would present a different case. But here, Ms. Musante was unquestionably a ministerial employee for 11 years and the decision to terminate her employment was made within a year of Monsignor Driscoll taking over for Father Hyl and instituting the changes in duties emphasized by Ms. Musante. Moreover, even after these changes were implemented, Ms. Musante retained a number of religious and spiritual duties, indicating that this case does not present a situation where a formerly ministerial employee is switched to an entirely different and principally secular job. Ms. Musante was still Director of the Religious Education program – and by her own admission in charge of overseeing the religious program –

and she still was Pastoral Assistant – and therefore still visited parishioners and distributed Communion. All of these undisputed facts suggests to the Court that the positions of Pastoral Assistant and Director of Religious Education continued to be principally religious and spiritual in nature, and as such Monsignor Driscoll's decision to replace Ms. Musante with another employee of his choosing is not something that the secular laws can or should regulate. *See Roman Catholic Diocese*, 213 F.3d at 805.

### IV.

Because the Court concludes on the undisputed record that Ms. Musante was a ministerial employee, the Court lacks subject matter jurisdiction over her ADEA and state law claims. Accordingly, Defendant's Motion for Summary Judgment [doc. #24] is GRANTED. The Clerk is directed to enter Judgment for Defendant and close this case.

IT IS SO ORDERED.

Mark R. Kravitz, U.S.D.J.

Dated at New Haven, Connecticut: March 30, 2004